Good morning, Stephen Wax, Federal Defender for Mr. Bischoff. This case involves two claims of ineffective assistance of counsel that arose during a trial that stemmed from a traffic accident between Mr. Bischoff's car and the bicyclist. It's our position that counsel's ineffectiveness on either ground alone is sufficient to warrant granting of the writ. I'm going to argue both of the claims of ineffectiveness, starting with the juror claim. And to set the context for this juror claim, I think it's important to reflect on the manner in which virtually every trial in this country begins. When the judge puts the case together, one of the first things that is said is, members of the veneer, do you know the parties? Do you know the lawyers? And then in virtually every case, the judge asks the lawyers to tell the members of the jury panel who their prospective witnesses will be. The reason our trials begin that way is because the knowledge that a juror might have of the parties, the lawyer, or the witnesses, could result in bias that could render the proceeding unfair. Looking at what occurred in this case, in that context, it seems to me that the juror claim is relatively simple and straightforward and should require the granting of relief. It is not contested that Mr. Bischoff told his attorney, Mr. Farmer, that juror Meyers and he were acquainted. And at this point in the argument, I'm going to stop with that fact alone and not get into any of the other facts. Because once that was said by Mr. Bischoff to his lawyer, the lawyer had a duty to inquire. When was that said, by the way? Is that during the course of ordeal? That is what the record reflects. I don't think that is in dispute. At Excerpt 52, which is where the attorney Farmer's affidavit that was submitted in post-conviction appears, he acknowledges that his client told him that. Now, obviously... In the Oregon State Court, by the way, just as a matter of curiosity, do they permit the attorney of order here, or is it conducted by the court? In most trials in most counties, the lawyers are permitted to ask questions. The practice has changed in the last decade. When this case was tried in Southern It's clear that knowledge of a juror of the defendant could be either favorable or unfavorable. I don't think that there can be any dispute about that. In order for the lawyer to fulfill his obligation to his client in the voir dire process and either exercise a challenge for cause or exercise a peremptory challenge, he needs to know, were Myers and Bischoff friends and on good terms, or were they enemies? I'm starting with that fact alone, because that fact cannot be disputed since that's from both Bischoff's testimony and Farmer's affidavit. And my argument is that once the client says that to the lawyer and reflect on, you know, that this is a record that tells you that Mr. Farmer is a relatively, excuse me, Mr. Bischoff is a relatively uneducated man, first timer in the criminal justice system late in his life. So he's relying on his lawyer to say, well, tell me about it. What is your relationship? Were you drinking buddies? And as Bischoff says, he's reformed, I'm not. Did you have a business relationship? As Bischoff says, we had a falling out about our horse business. Or, yeah, you know, we're fine, we're next to our neighbors and they get along wonderfully. In which case, Farmer would perhaps exercise his discretion in the voir dire process, and maybe he doesn't want to ask Jura Meyers any questions, because he wants to try to slip them onto the panel. On the other hand, if Bischoff says to him, we're enemies, again, he may not ask any questions, and he's going to exercise a peremptory challenge. Or, if what his client tells him is sufficient for him to lay ground for a challenge for cause, then Farmer is going to say to the judge, challenge for cause. But he did not ask. There was no follow-up on his part, given the key fact of the knowledge. He had an obligation to inquire. He did not. He was ineffective. Now, in terms of the prejudice that flows from that, the record tells us that Bischoff's testimony, both in his deposition, in post-conviction, and at trial, is that he and Meyers, the juror, had had a falling out. Whether or not he told that to his attorney is irrelevant, and this Court need not get into the question of whether there has been a credibility determination on that issue. That is not relevant. Well, let's assume that we're willing to go with you so far as to agree that it violates Strickland not to have inquired further. Okay. The next question, of course, is prejudice. Correct. What prejudice, and what form does the prejudice need to take, is it that you need to show? The cases that are discussed in the briefs distinguish between actual bias and implied bias. I don't believe that it matters in this case whether we need to show one or the other, because the record shows that there was a falling out between these two men, and that the relationship between them was a bad relationship. Once that is established, all of the juror cases, as I read them, say that the conviction is tainted. Now, when you say the record establishes we have testimony from Mr. Bischoff that that's so, is there any other conflicting testimony? I mean, I read the testimony that says, listen, we had a falling out over the way I managed or programmed his horses. There is no conflicting testimony. Now, to be sure, it might have been better for Mr. Bischoff if his post-conviction attorney had called Juror Myers. Under the Oregon law, there are prohibitions against contact between counsel and jurors. Whether or not he could have gotten court permission, I don't know, but it doesn't matter. Do we have record evidence on the further point that Myers was a reformed drinker and had a bias against those who continued to drink? I know that that was an allegation in the petition. Do we have record evidence to support that? Mr. Bischoff's testimony. And where does he say that? His testimony appears, as I recall it, at ER 115. Four places he's talking about it. Okay. 63, 65, 104, and 115. I'm sorry. Could you back up and give me those pages again? 63. Yep. 65. Yep. 104. Yep. And 115. Okay. And on 115 is where Bischoff says, yeah, I'm aware of his position, but I told him that he was a reformed alcoholic. Now, telling him he's a reformed alcoholic, et cetera. Now, the dispute between Mr. Bischoff and his attorney. Okay, I got that part. Is there record evidence that not only is he a reformed alcoholic, but he, I'm not sure what words to use, carries a grudge against people who continue to drink or has a bias against? Do we have that statement in the record as well? I can't answer that question at this moment. It is not appearing there on page 115. Okay. Don't take your time looking for it now. You can look at it during the other side record. Thank you. In terms of the finding, if any, that the post-conviction court made, the district court, in this case, concluded that there were no findings from the state court to which deference was owed. And we believe that that legal conclusion was correct and that the district court error was not in deferring improperly, but in reaching an incorrect conclusion on its own review. The one place in the record where the post-conviction court did comment in his findings was to say that the whole approach that Mr. Bischoff was taking in the case appeared to him not to be credible. And that all appears in the context of his discussion of the trial. There is no finding that Bischoff's testimony about the jurors' background and their relationship is incredible. And that is uncontradicted testimony, and we submit that that is sufficient to demonstrate the prejudice problem strictly. The one thing that, and you may be able to find something that will help me out as you're sitting through the argument for the state, Mr. Farmer's affidavit says, Petitioner advised me that Juror 1, Jake Meyer, knew him. He did not advise me, as alleged in Allegation 2, that Myers had become an outspoken opponent of those who continued to drink. And so I'm looking for any record evidence that says not only that he's a reformed alcoholic, but that he's an outspoken opponent. I will look for that. What I believe is relevant is whether Bischoff ever said that, not whether he told that to his attorney, because our position is it's enough. Yes, that's right. The inquiry would have revealed it. Okay. Now, turning to the question of the ineffectiveness with respect to the accident expert, what we're dealing with here is a state law distinction between Manslaughter 1 and Manslaughter 2. I don't think there's any question in this case but that Mr. Bischoff was drunk, there was an accident, he acted recklessly. The key piece is whether or not he also acted with extreme indifference to human life, which elevates the crime and substantially increases the punishment. In Farmer's affidavit, he said, looking at the eyewitness testimony here, two eyewitnesses testified that Mr. Bischoff's car angled toward the bicycle. No expert could have overcome that testimony. Now, that could be a statement of a reasoned judgment by an attorney. But for the fact that there is no testimony in the record from the eyewitnesses that Mr. Bischoff's car angled toward the bicycle. There is testimony from one of the witnesses, Hornbeck, that he saw Mr. Bischoff's car going, excuse me, coming over the line, and that's at ER 249. The other eyewitness, Cooter, as I went through his testimony, I did not find any reference to Mr. Bischoff straying, coming, and certainly nothing about angling over the line. So to the extent that the attorney, Farmer, in his post-conviction affidavit, says this testimony could not have been refuted, his facts are wrong. Second, the next layer of this argument is that the trial transcript shows that the most time in this case by the State was spent with an expert. One hundred and fifty pages of the trial testimony was their accident reconstruction expert, Kumichel's, testimony. And then in the closing argument, at pages 508 and 510 of the excerpt, the prosecutor says to the jury, it's unrebutted. Where is the testimony in rebuttal? As I'm reading the record, it seems to me that there is not really a dispute about whether the failure to call an expert was ineffective. The question, I think, again, is prejudice. And on the prejudice question, we have to make the argument first that this record demonstrates prejudice, and the record demonstrates prejudice from the testimony that was elicited from the State's expert in cross-examination. We've outlined four problems with this testimony, page 38 of our brief. They're very simple, they're very straightforward, and they are incredibly important. The expert says his hip was broken when, in fact, it was not. The expert says the rear of the bicycle was not damaged. When you look at the bicycle, the rear of the bicycle was damaged. The expert says that vertical marks on the car, and there's a whole bunch of testimony about that. He says there was no breaking, but then he has to concede that the way in which those vertical marks appeared, maybe there was breaking because the car would have dipped. And finally, he changes his mind and his testimony about the side of the head that was damaged. Now, with that in the record, I submit, we have demonstrated that an expert would have made a difference, that the Strickland Standard is certainly in that. There's a reasonable probability that when you have such heavy reliance by the State on an expert, and there are so many problems with this testimony, when the expert's testimony is relied upon to raise the element, that's it. Now, the second aspect of my argument on prejudice is ... I'm not sure I understand the prejudice part of it. That is to say, we understand that we have eyewitness testimony that he was weaving. We have eyewitness testimony that he's crossed over that so-called fog line. And you're arguing that we would have got a different answer if the jury could have been convinced that he did not, quote, angle toward suggesting that he did it deliberately, that he was acting with the heightened recklessness of extreme indifference to human life. But he was traveling somewhere between 40 and 50 miles an hour, and the bicycle was traveling at, I guess, what must have been an ordinary speed for a bicycle, just kind of riding along. Even angling is a very odd word to use there, given, I think, the maximum angling, and I guess not going to be very much. So I'm not sure. I'm having trouble being persuaded that angling is a key issue here. It was a key issue from the testimony of the State's expert, 150 pages. And he talks about, you know, 170 degrees or negative 10, I mean, whatever it is. Their theory was that the Bischoff car started straying off the road and hit the bike. The testimony from both of the eyewitnesses was that the bike was on or near the white line, and there was a foot of pavement on the outside of the white line. What is extreme indifference? The State statute, the State cases provide very little guidance. I mean, this is really a gut-check case as a trial. How does a jury feel about what was happening? No question the man is drunk and reckless, but how hard are we going to hit him? How bad do we think his conduct was? Given the fact that the State spent so much time and effort with its expert, it seems to me that that says that expert testimony from the State's perspective was critical. Okay. We've got your argument on hand. Let's hear from the State, and then maybe we'll have some time for a vote. Good morning. Carolyn Alexander, Assistant Attorney General for the State of Oregon. I'd like to take a moment or two to refocus the issues in this case. I think we've gotten a bit far afield on both of these claims. First of all, as you know, this is an ADEPA case. The issue in the case is whether the State post-conviction court's decision was an unreasonable determination of the facts. We need to focus back on the evidence that was before the State post-conviction court. The problem with Petitioner's case and the claims he raised there in his post-conviction case was that there was a fatal failure of proof. The claims have morphed since State post-conviction, especially the juror claim, and I'll get to that, but let's focus on the evidence that was before the State post-conviction court. Attorney Farmer said, Petitioner told me he knew the juror. He did not tell me that there was any animosity. He didn't tell me he was a reformed alcoholic. He didn't tell me any of that. All I knew was he knew. Now, what are you getting that from? That's the attorney's affidavit. Okay, but I think you made the affidavit a little better than it is. Are you at number two, paragraph two in the affidavit? Yes, page two, which is 52. Okay, the things you say when Farmer says he didn't tell me this, he didn't tell me that, the only thing that Farmer says he didn't tell me is he didn't tell me that he was an outspoken opponent of those who continued to drink. That's true, Your Honor. So you add to the list of things that Farmer says he didn't tell me. Well, that's true, Your Honor. And then let's go to the State post-conviction's questioning of Petitioner. And there's more information in that particular testimony. Okay. This is on Excerpt from Record 114. The post-conviction court is asking Petitioner, and he says, your attorney says, and he repeats what's in Attorney Farmer's affidavit. Okay. And Petitioner says, yes, I am aware of his position, but I told him that he was a reformed alcoholic. Court presses him a little further and says, telling him he's a reformed alcoholic, was he supposed to infer from that then he should have been dismissed as a juror? Is that what you're saying? Petitioner then goes back to his original statement, and the statement that's consistent with Attorney Farmer's statement, I told him that I knew him. No, he doesn't say that. I told him he should have been dismissed as a juror when he knew me. Right. Exactly. Exactly. Now, Petitioner's position is that the post-conviction court's credibility finding that his testimony wasn't credible is irrelevant. And I guess I don't understand that position. That's one of the issues in this case. And, again, goes to that issue of Petitioner's fatal failure of proof in post-conviction. Now, I'm sorry to be so sort of, in a sense, dense about this, but if you could put my nose in the state court fact-finding upon which you're relying, I'd like to read it. That's Excerpt of Record 124. Okay. It's this Court's conclusion that defense attorneys are the best. Hang on, hang on, hang on. Plaintiff's entire approach is not particularly credible. I'm slow here. I'm on page 124 of the excerpt. Right at the bottom, Your Honor. I've had an opportunity to review the transcripts. So what the state trial judge says, Plaintiff's, it's the Court's conclusion that defense attorney did the best he could with what he had to work with. Plaintiff's entire approach is not particularly credible in this particular case. In fact, it's stretching. I would conclude that judgment should be given to the defendant. There's nothing either singularly or grouped together that would lead this Court to conclude that, number one, there was ineffective assistance of counsel or, number two, that there was any sort of prosecutorial misconduct that somehow adversely affected Mr. Bischoff's rights. That's it? Correct. So we don't have anything very specific about it. I don't believe his testimony as to what I told him or didn't tell him as to juror or minor. It's not a specific credibility finding. He just finds that his testimony isn't credible. Well, not particularly. Well, no, he says his entire approach is not particularly credible. I don't know quite what he means when he says approach rather than testimony, but okay. Yeah. Through. Okay. Petitioner could have submitted the transcript for voir dire in postconviction. He didn't do that. We actually don't know what happened on voir dire because that was never presented. It was Petitioner's obligation in state postconviction to prove his case, but yet he doesn't provide the voir dire transcript. What we do know by his own testimony, if we credit that, is that the trial court questioned this juror itself, and the trial court apparently was satisfied that this juror could remain on the jury by Petitioner's own testimony. That's what we know of voir dire. So we don't know if counsel questioned him. We don't know if the court questioned him. Petitioner apparently couldn't remember and, as I said, didn't provide a transcript of voir dire, so we don't know what happened. So all we have is his testimony saying, well, I told him all of this stuff. We have attorneys saying he only told me that he knew him. The court goes with the attorney's testimony. But here's what's confusing to me about the claim now on appeal, and that is the original claim is attorney failed to challenge this juror for cause. That was what was pleaded in the postconviction petition as well as the federal habeas petition. That's what the district court considered. But now, in Petitioner's reply brief, it's morphed somewhat. Now it's the failure to consult with his client, the failure to inquire further, which rendered the voir dire process inadequate. That seems to me a little bit different claim. Actually, it seems to me a very different claim. If you take his claim now on face value, he didn't inquire any further, and then that rendered voir dire inadequate. It's confusing because he's saying, I told him we had a bad business relationship and that he was a reformed alcoholic. But then the claim is attorney Farmer somehow didn't inquire into that. I just don't understand. It's such an inconsistent allegation or argument that it's hard for me to comprehend that. On one hand, he's saying attorney didn't challenge him because of this information, even though I told him about all of these bases for this challenge. On the other hand, then he's saying he didn't investigate and inquire further because all he knew was that he knew him, and he had a duty to inquire into the basis of their relationship. Yes, sir. I think theoretically, yes. I think, yes, an attorney would have a duty to do that. The problem is we don't know if it happened or not. Because on one hand, Petitioner in post-conviction is saying that I told him all of this stuff, and then here he's saying apparently he never inquired into it. Again, that's the inconsistency that I'm having trouble with. Well, I'm not sure there's a total inconsistency. That is to say, we have Mr. Bischoff saying I told him this, and we're having Mr. Farmer say, but he didn't tell me that. The didn't tell me that is he didn't tell me that he was sort of a biased person against people who continued to drink. And I think the argument on Mr. Bischoff's side then is, well, he should have asked a little further, and I would have told him that, too. And that's the question, the point where we get to, well, you know, he really is carrying on a crusade against people who continue to drink. That, according to Mr. Bischoff, he didn't tell him, at least there's a denial as to whether he told him that. And I guess if he'd asked, maybe he would have told him. That's part of the reason I'm asking after Mr. Wax to say, so I can see exactly what's in the record as to what Mr. Bischoff says he did say. Certainly. And to answer that court's question, by the way, on that issue, I do not find either in the record testimony that he said, and he was out to get me for that reason. I think the only testimony he said was that he was out to get people generally for that reason. Yeah, he was a reformed alcoholic and an outspoken opponent of those who continued to drink. So it wasn't any personal animosity, at least this record, on this record, anyway. I think that's the crux of it, Your Honor. I think that's exactly the crux of it, is the ambiguities were resolved against Petitioner by the post-conviction court. So unless there's evidence in this record to show that that decision was unreasonable in light of the facts that were developed in post-conviction, then Petitioner loses. I mean, that's just basic adepto law. And I think we're stuck with that. The post-conviction court, who sat there and observed Petitioner, because he testified at his own trial, found his approach or testimony was not particularly credible. And he didn't limit that credibility finding in any way. The post-conviction court considered the evidence that Petitioner chose to put on. He chose not to put on an affidavit of somebody else saying, yeah, I know that juror, and by gosh, he is an outspoken opponent of those who drink, and especially Petitioner. He didn't put on Bourdier to show that counsel absolutely did nothing, did not ask him, and that that juror said, yes, I know him. That the trial court didn't pursue that as well. We don't know any of that because Petitioner didn't put it on. Now, there is one thing on this claim also I'd like to point out to the court, and that's the State's argument that this claim has not been properly exhausted. Only half of this claim has been exhausted. And I think that's an important point here. In the reply brief, Petitioner makes the point of saying that, well, the State doesn't rebut the argument that Petitioner preserved the claim for the Oregon Court of Appeals. Now, again, just to refresh the court on the facts, there was the juror claim, and there were two aspects of it. Bad business relationship, reformed alcoholic. He raised both of those claims, and both of those claims were litigated in the post-conviction trial court. In the Court of Appeals, he limited that claim to bad business relationship. And he specifically highlighted in his brief his own testimony that we had this forced training relationship that soured. He never pointed to his own testimony about the reformed alcoholic outspoken opponent of those who drink. Never referred to that at all. So while he raised the legal basis in effective assistance of counsel, he didn't raise the factual basis of that second part of the claim. I think that's crucial. His failure to exhaust renders the claim procedurally defaulted. And that type of failure to exhaust, I think, is contemplated by Reese v. Baldwin, now Baldwin v. Reese, where the court says an appellate court doesn't have to go to a lower court opinion and dig around in there to find what exactly Petitioner's claim is. Gray v. Netherland. Although you're off to one side a little bit from the Baldwin v. Reese case because that went to nature of the claim. And here you're talking about kind of evidence in support of the claim. Correct. Absolutely. And certainly there's a difference between raising the legal basis of the claim and raising the factual basis of the claim. But Baldwin v. Reese is an interesting case on many levels. And, in fact, I was there at the Supreme Court argument to hear that argument. And one of the things that the Supreme Court was concerned about was, gee, did you raise the factual basis of the claim, too? And, in fact, in Reese, there's just a very short statement, and the petition does not even contain a factual description supporting the claim, and it cites Gray v. Netherland. Gray v. Netherland, like Weaver v. Thompson, support the principle that a petitioner has to raise the factual basis of the claim as well as the legal basis. So while I agree, Judge Fletcher, that Reese is about a federal question, a federal claim, I think the general principle of exhaustion is highlighted in that case and applies here. Yeah, that's a very tricky question, though, because we're very familiar with habeas cases, particularly in capital cases, where the nature of the federal claim is quite clear at the state court, but the nature of the evidence in support of it gets a fair amount better in federal court. And the general practice is that the better evidence is looked at, and it's a hard line to draw. I agree. And I agree that the cases that talk about the factual basis are fewer and muddier than the Baldwin v. Reese issue, the legal issue, which is much more clearly developed. But I do think the principle applies, and I think going back to older cases, you can see that principle as well. The one point, I think the most important point on the expert claim is this was new evidence, the accident reconstructionist report. This was new evidence submitted for the first time in federal habeas. Petitioner did not develop this evidence in state court. And so under Cooper Smith v. Palmatier, he was not entitled to rely on the evidence in federal court. He could have gotten this expert in state post-conviction, and he failed to do that. He was obligated under Cooper Smith and Holland to develop that evidence in state court. And Petitioner's point that he developed his claim in state court just completely misses the boat. The rule is you have to develop the factual basis of your claim. You have to develop the evidence, not the claim. And the law in the circuit and the U.S. Supreme Court is pretty clear on that issue. On the merits, however, I don't think Petitioner can overcome his primary problem, and that's the two expert witnesses. The one expert witness saw Petitioner weaving back and forth, crossing the fog line, crossing the center line. And true, he testified that he simply hit the bicyclist. But the dump truck driver, Hornbeck, said he crossed the fog line and hit the bicyclist. The state's expert supported the eyewitness's account. Mr. Wong's report was much, much more equivocal than that. Well, he may have angled into him. He may have not. He may have hit the rear. He may have not. It was – I'm sorry to interrupt you. I should know this, but I don't. What time of day was the accident? 4.50 in the afternoon. And this was – What time of year was that? September. Yes, Your Honor. Thank you. And the conditions were? Dry, as far as I recall. Yes, absolutely. So, yes, that's correct. It would have been light. And I think the point is that here's a dump truck coming. Here's the bicyclist with his little dog. And here's Petitioner, who's clearly drunk. He doesn't slow down. He doesn't pull over. He makes an attempt to keep driving, and he ends up hitting the bicyclist. Under state law, and those state cases are cited in the red brief, under state law that's sufficient for a manslaughter, one conviction. But even if this Court considers the merits and considers Mr. Wong's expert report, it just doesn't rebut the eyewitness testimony, and it doesn't create a reasonable doubt that a jury, a reasonable juror, would have come to a different result in this case. Any further questions? Thank you. No, thank you. Mr. Wax, would you like a minute? Thank you. The testimony on pages 114 and 115 is the closest that it gets. You have the Court asking the question that includes the piece about, you know, reformed alcoholism, and then you have Mr. Bischoff's answer on the top of page 115. The critical piece here, I think, is we're dealing with, it doesn't matter whether he said he's a reformed alcoholic and he's biased against me. He has said twice, we had a conflict, we had a rift over the horse business, and the reformed alcoholism is enough for prejudice. Page 124, the post-conviction court, I think it's critical to read the entire paragraph of this finding. As I respectfully submit, this is not a credibility determination about what Mr. Bischoff said in the post-conviction case. He's talking about, I read the trial transcript as well as the exhibits. It may be indeed, you know, Plaintiff is a person of good character, but the evidence presented by the State left little question as to what occurred with respect to the accident. It is this Court's conclusion defense attorney did the best of what he had to work with. It's not particularly credible in this particular case. It seems to me that context says he's commenting on what the defense was and that the district court was correct when it said there is no fact-finding to which deference was needed. With respect to the State's argument about the fault, on the one hand, it just doesn't matter because the claim that was raised in the State court PCR appeal and petition for review was a claim that his attorney failed him with respect to the voir dire. The reason I point out in my reply that the State hasn't responded to my arguments about State law was reinforced by their argument today about Reese. It's irrelevant. Under State law, Mr. Bischoff did what was required in his statement of error, and under State law, that was broad enough. Thank you kindly. Thank you both for a good argument on both sides. The case of Bischoff v. Lampert is now submitted for decision. That completes our oral argument for right now this afternoon, and we will reconvene tomorrow at 9. Thank you.
judges: Tashima, W. Fletcher, Pollak